All rise. Hear ye, hear ye, hear ye, this Honorable Public Court of the 2nd District is now back in session pursuant to adjournment. The Honorable Kathleen Zinoff presiding. Thank you. Please be seated. Your Honor, this is the first case of the afternoon, ball 212-0405, Jennifer Shultz v. Performance Lighting, Inc. On behalf of the appellants, Mr. Joel S. Ostrow.     On behalf of the defense attorneys, Mr. Joel S. Ostrow. On behalf of the defense attorneys, Mr. Joel S. Ostrow. Good afternoon, Counsel. Mr. Ostrow. Thank you. Honorable Justices, Mr. Furlong, may it please the Court. There are three principal cases in this area in the appellate court, Vaughn, Miller, and Goula. The trial court dismissed the complaint of Jennifer Schultz, I think, fall under Vaughn, Miller, and Goula. Well, how so? Those cases did not involve allegations that the notice was defective, did they? No, they did not, except what they do address is that in Vaughn, Vaughn states that once the payor receives a withholding notice, and presumably recognizes that it pays income to the obligor, it then becomes obligated to make payment under the notice. And the Vaughn court, inciting Goula and Miller, said when an employer essentially disregards the withholding notice, they receive that liability under this Act exists. Well, that's the general statutory, you know, I mean, that's the purpose of the statute. That's what it says. But what about the language of the statute saying that the income withholding notice shall include the obligor social security number in date of termination? Shall generally means mandatory. So is the employer, the obligor, then supposed to reach out and contact people and try to figure these things out or what? Well, first of all, Goula says that they are. Goula says that if they have any questions and the attorney for the obligee has furnished his or her information, then the employer is obligated to contact that person if they have any questions about it. But I would like, first of all, Your Honor, certainly is correct that the word shall in the statute generally is a mandatory, creates a mandatory obligation. However, if there are no specific consequences in the statute that fall on the person who may not have completely complied with the dictates of the statute, then it is not necessarily mandatory anymore. What about the rules or our guides for statutory construction where you look at the statute and where one provision is specifically exempted, that means that the other provisions are mandatory. Specifically, the withholding notice has 12 specific items, but only one is expressly accepted. Well, I did address that in my brief, and I think I was about to stand by it, that I think that what the legislature was doing was being careful to say that just because there's a signature here, there's so many statutes under which a signature is required that if that signature is missing, the cause of action that exists under the statute is obviated. And I gave a couple of examples, and I think they just wanted to make sure that a trial court would not dismiss a claim under this because the person who was entitled to receive the child support didn't sign. I think that the principal intent of the statute was defined in Miller. I mean, I understand that there's a lot of people that don't like this statute and think it's unfair and think it creates a terrible remedy, but as the Illinois Supreme Court said in Miller, there's a substantial state interest in making sure that the child support is collected. This is the manner in which the state legislature has chosen to protect that interest. And if that, I don't think that under Miller and what the state legislature did, the state legislature intended that substantial interest to be defeated by omissions in the notice to withhold that essentially are insignificant and don't keep the employer from being able to comply with the notice. And I think what happened here is they don't deny that they received the notice. They don't deny that Philip Schultz worked for them. They don't deny they knew how much money they were supposed to withhold. They don't deny that they knew where to send the money. Somebody, and plus this was decided on a motion to dismiss too, somebody threw this notice to withhold into a drawer and didn't comply with it and said, well, you know what? We didn't have to because we weren't given his social security number. And at the end date of the... Could we follow your argument under which I'm perceiving is has some superficial appeal is they're sort of exalting form over substance. They know their obligation, but they're choosing to ignore it because the form is inaccurate. Is that... Well, I don't think they chose to ignore it because the form was inaccurate. I think they're using that as a defense now without ever having been required to explain why they ignored it. And I don't think these are sufficient reasons to ignore it. I can go into both of them specifically. One is, one of the ones they complain about is the end date of child support. Okay. Well, first of all, that's a pretty ephemeral concept to begin with because the end date of child support as defined in the statute is either when the child turns 18 or graduates from high school, whichever is later, but not before, not after they're 19. So there would be no specific end date anyway. Number... Secondly, on the ephemeral part of it, there's lots of reasons that child support could end prior to the emancipation of the child or the legal age of emancipation. There could be a change in custody. The child could go into the military. But beyond that, the notice did have the children's birth dates. Let me ask you this. None of the cases that you discussed as authority for your position discussed defective notice. Gullah did not deal with the defective notice. Millard didn't. Vaughn didn't. None of those cases dealt with the defective notice. The argument for the payor is that a proper notice is a condition preceding to the duty. You're putting the duty or essentially the cart before the horse. You're saying that as long as they had some notice without regard to the defects in the notice, the duty was there. That's your argument? Right, because the notice gave them the ability to comply with the child support order. And I don't think the legislature intended the omission such as the end date of child support. And I was going to mention, too, that they did have in the notice the children's birth dates. Most people understand that emancipation takes place at 18. And they could have called Salem Liquor, who said, call me if you have any questions about this. They could have called there and said, well, we need to know what date child support ends on, which they really don't to start paying. But if there was a concern there is they could have gotten that information. With regard to the Social Security number, they had it. Philip Schultz is an employee in there that issued the paycheck. They had the Social Security number. And as I said in my brief, it's pretty much discouraged now to put Social Security numbers into forms that may end up getting filed in court anyway. And, again, if this was, gee, we don't know how to pay the support or how much or where to send it, they could have called Salem Liquor. And I would say, Justice Burkett, with regard to previous cases addressing things of this nature, in Gula, in the appellate court, they did go to the Supreme Court, and they did not talk about this particular issue. So, I mean, it stands as affirmed. In Gula, the employer had to actually calculate the amount of support because the employer was in Mississippi, and Mississippi had different rules for how much it could withhold. So even though the statute says one of the 12 mandatory things is how much are you supposed to withhold, the Gula court didn't seem to find that the fact that the employer himself would have to calculate that was enough to mean the statute did not apply. So let me ask you this. As I'm sitting here listening to this, you know, again, there's an appeal to your logic that there's a public policy that should err on the side of making sure that children are supported, and that's a goal, a very admirable goal for the court system, for the state. But what about if an order just shows up with a name? Is there any point of having notice? I mean, how far do we take the argument that once the obligor, the employer, finds out, even if it's only a name on a sheet of paper, you seem to be indicating, well, that should be enough. No, I'm not, and my position is that the employer is entitled to be notified of the essential information that allows it to comply with the notice to withhold. That essential information is who is your employee, who is the recipient, where does the money go, and even though Gula, under Gula, they seem to be a little bit lax on the precise amount of support, I think the amount of support belongs in the notice too. Once an employer has that information, they have no reasonable excuse to discard the notice. And, again, as I said, this was decided on a motion to dismiss, and we don't know why they discarded the notice. We do know that Jennifer Schultz got no child support for a period of many weeks, and we also know that the Illinois Supreme Court has said that even though this is a substantial penalty, the state has a sufficient amount of interest in this to apply that penalty. And I do want to briefly address, although the court has not asked, the derogation of common law. That's my next question. I mean, there is a strong line of authority that states that where a provision imposes a penalty, that's in derogation of the common law. Strict compliance is required. Well, I don't understand why this is in derogation of the common law because the collection, or that argument, because the collection of child support and numerous ways to enforce it. This is not the collection of child support. This is the imposition of a statutory penalty for the failure to withhold. It's not child support. The child support is owed by Philip, not the company that he worked for. This statutory penalty is in derogation of the common law. It did not exist under the common law. Except I would say this in response to that, that there are many statutes under which penal or punitive measures have evolved over time. And a change in the way in which the employer is addressed, when the employer can always be addressed, I don't think is in derogation of the common law. It's been, well, I don't want to beat Miller to death, but it's been, you know, and Miller and I said this is not unconstitutional. We realize this is drastic. But that had to do with the penalty itself, not compliance with the statutory requirements by. . . I understand that, but I think that. . . The obligee. I believe that if strict compliance were. . . If the state legislature meant that the failure to strictly comply would mean that the employer did not have a duty to pay, it would have said so. And there is no consequence stated in the statute that falls upon the payee or the obligee for having a notice to withhold that may have left some things out. And in GULA, I mean, they do make it clear that if the employer has any questions, but they've been furnished the name of the attorney, then they should call the attorney and clarify that information. It's not as if this was. . . What about Ms. Lichter's obligation to make sure that she has filed a proper notice and not correcting it during a two-year period between the time that the withholding order was entered and the time that you initiated this action? The only thing that I can say in response to that, I think my. . . And this is all Sir Maya's. First of all, I know Ms. Lichter. I know she's practiced for years and years. But my assumption is that she has always sent these out this way with a letter saying, call me if you have any questions. And I also don't know if she ever knew that Ms. Schultz wasn't receiving the support under the. . . I mean, I know she's not the person who represented him at the time that this action was filed. Counsel, could we segue into another issue? I want to hear your comment on the propriety of this case going out on a 2-615 motion as opposed to 2-619. Recognizing the 2-615 motion, all well pleaded facts are considered to be true, 2-619 is generally used to show affirmative manner to defeat the claim. Right. Which seems to be more appropriate. So what's your comment on this case going out on 2-615? Okay, well, first, I'll address 2-619 because Vaughn said you cannot dismiss a case based on saying, you know, my knowledge was this and my knowledge was that. I mean, as long as you had, as long as the employer had the notice to withhold and didn't pay, a cause of action has been stated. Or affirmative manner under 2-619 can't result in a dismissal. Under 2-615, I would say the analysis is pretty much the same. A cause of action was stated. And what the defendant is saying is that we have affirmative manner. That's basically what they're saying. And I know that 2-616 and 2-619, you can plead them in the same pleading for many years now. But basically they're saying, well, since they, since the initial notice of withhold omitted some information, we had no duty to comply. But I think that under Vaughn, since a cause of action is stated once the allegations are that they received the notice, they knew that this person was their employee, they knew how much to pay, they knew where to send it. 2-615 no longer applies, which is why I didn't mention a couple of times along the way here that I think minimally there needs to be a hearing here for them to explain why they ignored the notice and why they didn't call Sally Lichter. So, if there are no further questions. Thank you. Mr. Furlong. Justices, may it please the court. Mr. Ostro, Michael Furlong on behalf of Performance Lighting Inc., the appellee. Initially, Justices, I'd like to respond to the first sentence of the reply, which takes issue with the fact that no effort is made by Performance Lighting to explain the alleged failure to withhold. And it's not part of the record, but it's looming over this argument, and because we don't have an opportunity to respond, I'd just like to state that the reason was clerical error, human error. Performance Lighting routinely responded to notices. This was misfiled, and after the complaint was received, Performance did tender the amount subject to withholding. Now, this is not in the record? This is not, but it's raised on reply. It was raised to the trial court, too. It wasn't part of the consideration, though, because it's really not relevant. Well, let's stick to the record, then. What about Justice Hudson's point? Shouldn't this really be characterized as a 2-6-19 motion because the lack of notice is an affirmative matter? And, you know, 2-6-15, all well-pleaded facts are taken as true. They pled notice, they pled duty, and they pled failure to withhold. I respectfully disagree in this case because a verified complaint attaching exhibits, including the notice, and the proof of service of the income withholding notice were attached to the pleading. So, yes. You're saying the defect was a character defect? Correct. It's a verified pleading. There's never been an argument that this can be corrected in an amended pleading, and, in fact, it can't be because the verified pleading says this is the notice, this is the proof of service of the income withholding notice. It's facially obvious from the pleading, so it's proper under 2-6.5 to dismiss. What about his argument, you know, I want to get this question out, that basically you're exalting form over substance. The employer knows who the applicant for is. They know who the employee is. They know the situation. They have access to Social Security number. They can look it up. There is an overarching public policy to make sure the children in the state are supported. So how do you respond to that? This is simply exalting form over substance. My response to that, Justice, is that the form is facially apparent from reading the statute, the mandatory language of the statute. The notice shall contain these items. The notice shall be served on the obligor by ordinary mail. And I'm not going to argue that it's not important to the public policy of the state of Illinois to have children receive income withholding from payors. What I am arguing is that it is not the public policy of the state of Illinois to let the obligee ignore the requirements of the statute. Wait two years to file a lawsuit. Bring an action for hundreds of thousands of dollars in penalties. Jeopardize the ability of a business to continue facing an enormous penalty that can have repercussive effects on all the other employees of the business. So if someone, this isn't about compensation. Really, this is about the hundreds of thousands of dollars in penalties. And the reason I suspect you don't see a lot of these cases go up is that what lawyers would typically do if a notice wasn't responded to is a letter would be sent or a call would be made. Hey, payor, you're not responding to this. What's the issue? That's not the issue. But that's why you don't have cases like this. And it could have easily been resolved. And the compensation could have been paid to the obligee. And we wouldn't be here talking about a cause of action for hundreds of thousands of dollars in statutory penalties. So if the statute says it's mandatory and it creates a statutory remedy that is clearly in derogation of common law and is penal, it has to be strictly construed against the obligee. So where is the obligation to call, if at all? So you're saying there's never an obligation. Let's assume there's only one piece of information that's missing. But the notice is accompanied by a letter that says, if you have any questions, give me a call. You're saying that every single thing always has to be on there and, therefore, there's no obligation to call. No, but the statute directly addresses the one time when an omission does not affect the validity. Right. So the legislature has spoken on that. It says in 2820C, there's 12 requirements. If you don't have the signature of the obligee, you don't have the printed name of the representative, it does not affect validity. I'm not arguing that there's an obligation to call. I'm just responding to Justice Huston's question about the policy of the state of Illinois and that there's more than one policy to consider here. And I don't think that the legislature's intent, manifested in the clear language of the statute, is to let obligees flaunt the requirements of the notice but hold payors strictly liable and allow the obligee to just substantially comply. Explain how you have standing to assert that there was improper service on Phillip. How does that affect the duty? If the duty exists, improper service on Phillip has nothing to do with it, correct? I have a slightly different view of that requirement. And where the statute says that a payor is entitled to rely on a notice regular on its face, then a payor that gets a notice that's irregular on its face can't rely on it. And the implication of that is the payors face liability for relying on notices irregular on their face. If they wrongfully withhold, they're converting their employee's income. They want to know that their employee is also on notice that the income is going to be withheld to resolve any disputes that may exist between the employer and employee. Correct? And so what was argued in reply actually touches on this, this concept of this is an additional remedy. It's not meant to replace remedies. There is a case that because it was raised in reply that illustrates this concept. Excuse me, let me. It's the GMC case under the notices, the service to the obligor of the income withholding notice, the copy at the time. In that case, a payor said, we are only liable under the Income Withholding Act for continuing to pay beyond a termination date. And because the Income Withholding Act doesn't address our continuing to pay under the after the termination date, the employee doesn't have a cause of action against us. And the court said, no, you're still liable for converting the employee's income. So if here, Philip, the father, the obligor, isn't served according to the statute and the payor performance continues to pay on an irregular notice where Philip hasn't gotten statutory notice, they are now exposed to Philip. So that's our standing. And when you construe it in party material with the entire statute, which talks about reliance on a notice regular on its face, we're entitled to rely on a notice regular on its face. When it's irregular, we've got exposure. And that's, I think, the long-winded answer to your question. Sorry, Justice Burkett. I think that we've covered all the points. I could go through my outline and beat a dead horse, but I see heads shaking, and I'll spare you. All right. Thank you. Thank you. Mr. Askew. Very briefly, but on the proof of service of notice to withhold income, it states, Respondent's attorney, Matthew Kaplan, personally served a court on November 19, 2009. So, again, this is an elevation of formal or substance. Philip Schultz knew there was a child support order. His attorney knew how much it was for. He knew the notice to withhold had been prepared, what it said, and that it was being sent to performance lighting. Now, with regard to Mr. Furlong saying, you know, it was simply misfiled, which may or may not be the case, and it's not a record. But basically that saying, even if we had the information, we wouldn't have paid it anyway because we – and then what? Then are they liable? I mean, and the – and in Miller, and I think Miller and Gulerud together, I think, pretty much clarified this. In Miller, it says that one of the reasons the penalty isn't unfair is that the penalty is in the control of the payor, which is all the payor has to do is start paying the support and there is no penalty. And so if they know that there is a support order and they don't comply, they have been hoist on their own petard, so to speak. And in Gula, it says if you're not clear about what you're supposed to do, then call the attorney for – who served as a venue and get that information. So the – essentially, performance lighting could have called Sally Lichter if they could reasonably claim, which I don't think they can, that not having a Social Security number on that form and not having the end date for child support stated on that form confused them. Then they could have called her and started paying and there would have been no penalty. So it wasn't – and plus, I would say, it's neither – I think it's in Miller that quite a long time went by between the nonpayment of support and the filing of the complaint, and that was found not to be a nonissue in the case. There is a statute of limitations. It was met here. It's not – I guess there's some inference that somebody sat back and waited for the penalties to accrue, but there's no evidence of that. And if that's a relevant issue, it should be at the same hearing in which performance lighting explains why they didn't pay the support and call Sally Lichter. So, thank you. Thank you very much, counsel. The court will take the matter under advisement and render a decision in due course. Court stands adjourned for the day. Thank you. Thank you.